UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
RICHARD J. VILLANI,

                           Plaintiff,

                                              **MEMORANDUM & ORDER**

       - against -                               05-CV-5503 (DRH)


JO ANNE B. BARNHART,
Commissioner of Social Security,


                            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
**A P P E A R A N C E S :**

**BINDER AND BINDER, P.C.**
Attorney for Plaintiff
215 Park Avenue South, 6th Floor
New York, New York 10003
By: Charles E. Binder, Esq.

**BENTON J. CAMPBELL**
**UNITED STATES ATTORNEY**
Attorney for Defendant
One Pierrepont Plaza, 14th Floor
Brooklyn, New York 11201
By: Karen T. Callahan, Special Assistant U.S. Attorney

**HURLEY, Senior District Judge:**

*INTRODUCTION*

           Plaintiff Richard J. Villani ("Plaintiff") brings this action pursuant to 42 U.S.C.

§ 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (the

"Commissioner" or "Defendant") which denied his claim for disability benefits.  Presently

before the Court are Plaintiff's and Defendant's motions for judgment on the pleadings pursuant

to Federal Rule of Civil Procedure 12(c).  For the reasons discussed below, both motions are

denied and the case is remanded for further administrative proceedings.

*BACKGROUND*

# I.       Procedural Background

Plaintiff applied for disability benefits on November 19, 1998.  (Tr. at 46-49.)[1] Plaintiff claimed that he had been disabled since September 15, 1989, because of arthritis in both knees, herniated discs, degenerative disc disease, hypertension, and gout.  (*Id.* at 46.)  After the application was denied initially and on reconsideration (*id.* at 37-40, 42-44), Plaintiff requested a hearing.  (*Id.* at 45.)  On November 29, 1999, Plaintiff appeared before Administrative Law Judge ("ALJ") Joseph Halpern.  (*Id.* at 252-64.)  Plaintiff was represented by present counsel. ALJ Halpern considered Plaintiff's claims de novo and, on February 2, 2000, issued a decision finding that Plaintiff was not disabled.  The ALJ found that although Plaintiff suffered from severe impairments of hypertension and obesity that prevented him from performing his past work, Plaintiff was able to perform the full range of sedentary work prior to December 31, 1994, when his insured status expired.  (*Id.* at 22-26.)

Plaintiff requested that the Appeals Council review the ALJ's decision.  (*Id.* at 17.)  By letter dated September 20, 2002, the Appeals Council declined to review the claim.  (*Id.* at 8-9.)  Thereafter, the Appeals Council set aside its earlier decision to consider new evidence. (*Id.* at 3.)  On September 23, 2005, the Appeals Council again concluded that there was no basis to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 3-6.)

---

[1] References to "Tr." are to the Administrative Record filed in this case.

## II.     Factual Background

### A.     Non-Medical Evidence

Plaintiff was born on January 15, 1950, and was 39 years old as of September 15, 1989, the date he claims to have become disabled.  (*Id.* at 46.)  It is undisputed that he last met the insured requirements of the Social Security Act on December 31, 1994, when he was 44 years old.  From 1985 to 1989, Plaintiff worked as a helper on a moving truck, loading and unloading furniture occasionally weighing over 50 pounds.  (*Id.* at 51, 252-56.)  For approximately two years prior to the moving truck job, he worked as a vendor in a flea market.  (*Id.* at 51, 53.)     Plaintiff testified before the ALJ on November 29, 1999.  He stated that he has been unable to work since September 15, 1989.  (Tr. at 256.)  His pain affected his ability to sit and stand, so he has to alternate between the two, sitting no more than ten to fifteen minutes and standing no more than half an hour.  (*Id.* at 258.)  He cannot go up and down stairs without a cane.  (*Id.*)  He is in "constant pain" and can walk only when on pain medication.  (*Id.* at 259.)  He injured his back in 1975 and always had pain but "learned to work and live with it until it just gets so unbearable that [he] can't straighten up [and] can't stand for hardly any period of time."  (*Id.*)  He has sciatica that radiates down both legs from the buttocks to behind his knees.  (*Id.*)  He has gotten some short-term relief from epidural steroid injections, but then "it just goes back to the normal pain that [he's] been living with since 1975."  (*Id.*)

### B.     Medical Evidence

The medical evidence before the ALJ  is briefly summarized below.

### 1. *Dr. Tabershaw - Orthopedic Surgeon*

Plaintiff began seeing Dr. Richard J. Tabershaw, an orthopedic surgeon, on May 23, 1993, for "pain in both knees for 3 years." (Tr. at 231.) His initial examination revealed a weight of 300 pounds and a height of 5 feet 8 inches. X-rays of both knees were consistent with "degenerative arthritis in all three compartments." (*Id.* at 234.) Plaintiff returned to Dr. Tabershaw on June 30, 1993, on which date Dr. Tabershaw noted that there was no change in Plaintiff's condition and that he would consider performing an arthroscopic procedure if Plaintiff loses weight and is "still miserable." (*Id.* at 230.)

On July 9, 1993, Dr. Tabershaw performed an arthroscopic debridement[2] and partial medial and lateral meniscetomy[3] on Plaintiff's left knee due to what was diagnosed as internal derangement of the left knee. (*Id.* at 232-33.) Dr. Tabershaw postoperatively assessed Plaintiff's prognosis as "guarded," noting the degenerative nature of his arthritic condition. (*Id.* at 233.)

On July 28, 1993, Plaintiff reported feeling "well despite having not attended physical therapy," but weight loss again was suggested. (*Id.* at 228.) On September 8, 1993, Plaintiff complained of suprapatellar[4] pain, even though he had lost 20 pounds. (*Id.*) Advil was prescribed, along with Relafen, to control the pain. (*Id.*)

On October 20, 1993, Plaintiff reported feeling "much better" for having lost 20

---

[2] Excision of devitalized tissue and foreign matter from a wound. *Stedman's Medical Dictionary* 460 (27th ed. 2000).

[3] Excision of a meniscus (a crescent-shaped intraarticular fibrocartilage) from the knee joint. *Stedman's* at 1091.

[4] Pain above the kneecap. *Stedman's* at 1731.

pounds, but his left knee was still painful.  (*Id.* at 227.)  By November 30, 1993, pain had

increased in his right knee and his left knee remained "very painful."  (*Id.* at 226.)  In January

1994, a scope of the right knee was discussed and his anti-inflammatories were continued.  (*Id.*

at 223.)  Plaintiff reported that his left knee felt better.  (*Id.*)

Plaintiff continued to follow up with Dr. Tabershaw until October 30, 1995.  (*Id.*

at 218-22.)

### 2. *Dr. Donatelli - Treating Family Practitioner*

Plaintiff began treatment with Dr. Anthony Donatelli, Jr., a family practitioner, in

June 1993.  (*Id.* at 128.)  At the first visit, he was seen for "hypertension, morbid obesity, and

severe arthritis."  (*Id.* at 213.)  The record contains handwritten notes of approximately bi-

monthly visits between June 1993 and October 1998, mainly for the monitoring of Plaintiff's

blood pressure.  (*Id.* at 76-128.)  The notes also document anti-hypertensive medication

adjustment, Plaintiff's obesity, and his gradual but temporary weight loss between June 1993

through May 1996.  Specifically, he weighed approximately 340 pounds in July 1993, weighed

322 pounds two months later, came down to 299 pounds in November 1994, and then gained a

bit more, settling in at 306 pounds through at least May 1996.  (*Id.* at 94-127.)

In a letter dated May 8, 1999, which post-dates the December 1994 date upon

which Plaintiff's insured status expired, Dr. Donatelli stated that Plaintiff had been "disabled"

due to "hypertension, morbid obesity, and severe arthritis" since 1989.  (*Id.* at 213.)

### 3. *Dr. Altschul - Treating Cardiologist*

In March 1994, Dr. Donatelli referred Plaintiff to Dr. Larry Altschul, a

cardiologist, due to hypertension which had increased despite increases in Plaintiff's anti-

hypertensive medications, along with shortness of breath on exertion as well as increasing episodes of chest tightness associated with exertion and anxiety. (*Id.* at 171.) Physical examination revealed Plaintiff to be "markedly and morbidly obese." (*Id.*) Plaintiff's EKG was "within normal limits." (*Id.*) An echocardiogram revealed concentric left ventricular hypertrophy[5] with a normal left ventricular chamber size and ejection fraction. (*Id.* at 172.) The valves were all normal. (*Id.*) Dr. Althschul noted that Plaintiff's morbid obesity was "obviously" a component in the etiology of his shortness of breath but added that another element of his symptoms is related to "his long-standing hypertension with hypertensive heart disease and a thick left ventricle." (*Id.*)

A thallium stress test was performed on March 8, 1994, which did not reveal any evidence of underlying ischemic heart disease (*id.* at 175), but did show concentric left ventricular hypertrophy with normal left ventricular function. (*Id.* at 176.) In a note dated March 23, 1994, Dr. Altschul found that Plaintiff's left ventricular hypertrophy "is also aggravated by his morbid obesity, thereby increasing his myocardial oxygen demand which can give rise to symptoms similar to that seen with coronary artery disease." (*Id.* at 175.) Dr. Altschul concluded that Plaintiff had hypertensive heart disease and recommended a course of treatment directed towards control of Plaintiff's blood pressure and an increase in exercise and dieting. (*Id.*) He stated that Plaintiff did not need to return unless further cardiac problems

---

[5] General increase in bulk. *Stedman's* at 857.

develop.  (*Id.*)                                         ***DISCUSSION***

**I.**     ***Standard of Review***

    **A.**     ***Review of the ALJ's Decision***

        In reviewing a decision of the Commissioner, a court may "enter, upon the

pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision

of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

42 U.S.C. § 405(g).  The Court may set aside a determination of the ALJ only if it "based upon

legal error or is not supported by substantial evidence."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d

Cir. 1999) (internal quotation marks and citation omitted).  "Substantial evidence is 'more than a

mere scintilla,' and is 'such relevant evidence as [a] reasonable mind might accept as adequate to

support a conclusion.'"  *Jasinski v. Barnhart,* 341 F.3d 182, 184 (2d Cir. 2003) (quoting

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Furthermore, the findings of the

Commissioner as to any fact, if supported by substantial evidence, are conclusive, 42 U.S.C. §

405(g), and thus, the reviewing court does not decide the case de novo.  *Halloran v. Barnhart*,

362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks and citation omitted).

    **B.**     ***Eligibility for Disability Benefits***

        To be eligible for disability benefits under the Social Security Act (the "SSA"), a

claimant must establish that he is unable "to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 423(d)(1)(A).  The SSA further states that this impairment must be "of

such severity that [the claimant] is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

The SSA has promulgated regulations prescribing a five-step analysis for evaluating disability claims. *See* 20 C.F.R. § 404.1520. This Circuit has described the procedure as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa*, 168 F.3d at 77 (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)). The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that the claimant is capable of working. *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003).

## II.    *Application of the Governing Law to the Present Facts*

### A.    *The ALJ's Decision*

The ALJ found that Plaintiff was not disabled on or prior to December 31, 1994, when Plaintiff's insured status expired. Applying the five-step analysis enumerated in 20 C.F.R. § 404.1520, the ALJ found that Plaintiff had satisfied the first two steps, to wit: (1) Plaintiff had

not engaged in substantial gainful activity since September 15, 1989, the date he alleges he became unable to work; and (2) Plaintiff had severe impairments related to his obesity and hypertension. The ALJ found, however, that Plaintiff did not meet the third step because his impairments neither met nor equaled in severity any impairment in the Listing of Impairments, Appendix 1, Subpart P, Part 404 of the Regulations. Because the ALJ found that Plaintiff's ailments did not qualify as a per se disability under the listings, the ALJ went on to analyze the fourth factor, i.e., whether Plaintiff's impairments precluded performance of his past relevant work. The ALJ found that they did, given Plaintiff's "very heavy work" as a mover. (Tr. at 25.)

Once the ALJ determined that Plaintiff was not able to perform his past work, the ALJ analyzed the fifth and final step, viz. whether the Commissioner had established that there was other work Plaintiff could have performed. Finding that Plaintiff, despite his impairment, "remained capable - in an eight-hour workday - of sitting approximately six hours; standing/walking approximately 2 hours and of lifting/carrying up to 10 pounds occasionally," the ALJ concluded that Plaintiff remained capable of performing sedentary work through December 31, 1994. (Tr. at 26.) In reaching this conclusion, the ALJ noted Plaintiff's "younger age, [his] high school degree and [his] history of unskilled work." (*Id.* at 25.) Thus, the ALJ found that Plaintiff was not disabled under the SSA.

### B. *Plaintiff's Arguments*

Plaintiff asserts the following three arguments in support of his contention that the ALJ's decision should be overturned: (1) the ALJ did not properly consider evidence from Plaintiff's treating physicians; (2) the ALJ did not properly assess the impact of Plaintiff's

obesity in combination with his arthritic and hypertensive conditions; and (3) the ALJ did not

adequately consider Plaintiff's subjective complaints. The Court will address them in turn.

1.     ***The Evidence From Plaintiff's Treating Physicians***

a.     ***The Treating Physician Rule/ ALJ's Obligation to Develop Record***

Social Security regulations require that an ALJ give "controlling weight" to the

medical opinion of an applicant's treating physician so long as that opinion is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa,*

168 F.3d at 78-79. The "treating physician rule" does not apply, however, when the treating

physician's opinion is inconsistent with the other substantial evidence in the record, "such as the

opinions of other medical experts." *Halloran,* 362 F.3d at 32; *see also Veino v. Barnhart*, 312

F.3d 578, 588 (2d Cir. 2002). When the treating physician's opinion is not given controlling

weight, the ALJ "must consider various 'factors' to determine how much weight to give to the

opinion." *Halloran,* 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2)). These factors include:

(1) the length, nature and extent of the treatment relationship; (2) the evidence in support of the

treating physician's opinion; (3) consistency of the opinion with the entirety of the record;

(4) whether the treating physician is a specialist; and (5) other factors that are brought to the

attention of the Social Security Administration that tend to support or contradict the opinion. *Id.*

§ 404.1527(d)(2)(i-ii) & (d)(3-6); *see also Halloran*, 362 F.3d at 32. Furthermore, when giving

the treating physician's opinion less than controlling weight, the ALJ must provide the claimant

with good reasons for doing so. 20 C.F.R. § 404.1527(d)(2).

In addition, it is clearly stated law in the Second Circuit that "while a treating

physician's *retrospective* diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or 'overwhelmingly compelling' non-medical evidence." *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003) (emphasis added); *see also Rivera v. Sullivan*, 923 F.2d 964 (2d Cir. 1991) (reviewing Second Circuit law on retrospective diagnosis and reversing denial of benefits where retrospective diagnosis of treating physician not given sufficient weight with regard to degenerative condition).

Finally, the ALJ may not reject the treating physician's conclusions based solely on inconsistency or lack of clear findings without first attempting to fill the gaps in the administrative record. *Rosa*, 168 F.3d at 79. "It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding,'" even if the claimant is represented by counsel. *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Echevarria v. Secretary of HHS*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also Butts v. Barhart*, 388 F.3d 377, 386 (2d Cir. 2004) ("'It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'") (quoting *Seavey v. Barnhart*, 276 F.3d 1, 8 (1st Cir. 2001)), *amended on other grounds on rehearing*, 416 F.3d 101 (2d Cir. 2005).

### b. *Application to the Present Case*

Here, the ALJ concluded that although Plaintiff's impairments were severe and he was unable to perform his past work, Plaintiff remained capable of performing sedentary work from September 15, 1989 through December 31, 1994. In making this determination, the ALJ reviewed the reports of Dr. Altschul, Plaintiff's cardiologist, and noted the doctor's conclusion that Plaintiff had hypertensive heart disease aggravated by morbid obesity. (*Id.* at

24.)  The ALJ also summarily noted that Plaintiff "has been seeing Dr. Donatelli [Plaintiff's

treating family practitioner] for many years."  (*Id.* at 23.)  Although the ALJ further noted that

Plaintiff "had arthroscopic surgery on his right knee in 1994" (*id.*), he later stated:

> Handwritten progress notes covering the period June 1993 through
> November 1994 showed nothing of great or long lasting
> significance nor did laboratory studies in 1993 and 1994 and actual
> records of orthopedic treatment for knee, shoulder and back
> problems do not begin until April 30, 1997, which is well after the
> expiration of insured status.

(Tr. at 24 (internal citations omitted).)   He made no reference to Dr. Tabershaw, Plaintiff's

orthopedic surgeon, nor did he address Dr. Donatelli's May 1999 conclusion that Plaintiff had

been "disabled" due to "hypertension, morbid obesity, and severe arthritis since 1989."  (*Id.* at

213.)

After reviewing the ALJ's decision, and for the reasons that follow, the Court

finds that the ALJ failed to accord the treating physicians' opinions sufficient weight.  Further, to

the extent there were gaps in the record concerning Plaintiff's functional abilities during the

relevant time period, the Court finds that the ALJ erred in failing to develop the record to

fill these critical voids.

As an initial matter, the ALJ mischaracterized the record by stating that "actual

records of orthopedic treatment for knee, shoulder and back problems do not begin until April

30, 1997."  In fact, Dr. Tabershaw's records contain a May 1993 X-ray report which showed

degenerative arthritis "in all three compartments" of the knees.  (*Id.* at 234.)  His records also

include a July 1993 operative report detailing Plaintiff's knee surgery, with a diagnosis of:

"Guarded.  The patient has degenerative arthritis."  (*Id.* at 233.)  Finally, Dr. Tabershaw's notes

reflect Plaintiff's postoperative care, all within the relevant time period, documenting Plaintiff's

knee pain.  (*Id.* at 223, 225-30.)

Moreover, the ALJ summarily dismissed the significance of Plaintiff's treating physicians' notes from June 1993 through November 1994 as "show[ing] nothing of great or long lasting significance" despite the fact that the record did not contain any evidence contradicting their opinions.  *See Schall v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) (holding that "the Commissioner's failure to provide 'good reasons' for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error."); *Baize v. Barnhart*, No. CV-02-3654, 2003 WL 23303419, at *9 (E.D.N.Y. Nov. 24, 2003) ("[T]he unreasoned rejection of evidence favorable to plaintiff is unacceptable.").  Moreover, the ALJ never even acknowledged Dr. Donatelli's retrospective opinion, given in a letter dated May 8, 1999, that the combination of Plaintiff's impairments rendered him "disabled since 1989."[6]  (Tr. at 213.)  As noted above, Dr. Donatelli's retrospective opinion was entitled to controlling weight unless it was contradicted by other medical evidence or "overwhelmingly compelling" non-medical evidence. *Byam*, 336 F.3d at 183.  Here, the earlier evaluations do not appear to contradict Dr. Donatelli's diagnoses, and in fact, in some of their aspects, could be read to support them.[7]

Most significantly, however, other than Dr. Donatelli's retrospective opinion that

---

[6] Dr. Donatelli first began treating Plaintiff on June 24, 1993; therefore, he treated Plaintiff during at least a portion of the operative time period, viz. September 1989 to December 1994.  (Tr. at 213.)

[7] The fact that Plaintiff's condition may have been degenerative does not render Dr. Donatelli's opinion invalid.  *See Byam*, 336 F.3d at 183 ("We do not rule out the possibility that the plaintiff's condition may have degenerated from 1993 to 1997-98, raising a concern about the retrospective accuracy of Dr. Nepveu's evaluation.  However, in other cases of degenerative conditions and speculative retrospective diagnoses, plaintiffs have won reversals of adverse decisions.").

Plaintiff was "disabled" since 1989, there is no specific information in the record regarding Plaintiff's ability to perform sedentary work during the operative period, September 1989 to December 1994. According to the SSA, sedentary work generally involves lifting no more than ten pounds at a time, and two hours of standing or walking and six hours of sitting in an eight hour work day. SSR 83-10 (Nov. 30, 1982). Although Plaintiff was examined by Dr. Jerome Feldstein, an internist, at the behest of the Commissioner on February 18, 1999, his findings regarding Plaintiff's specific functional abilities post-date Plaintiff's insured status. (*Id.* at 192.)

As the ALJ recognized, it was the Commissioner's burden to demonstrate that Plaintiff retained the functional capacity to perform a full range of sedentary work. The ALJ found that the Commissioner met this burden because "there [wa]s nothing in the record indicating that [Plaintiff] would have been prevented from performing sedentary work requiring primarily sitting with occasional; standing and/or walking and lifting/carrying up to 10 pounds occasionally, on or prior to December 31, 1994." (Tr. at 25.) However, an absence of a specific finding regarding Plaintiff's abilities to perform sedentary work pre-December 1994 is not necessarily inconsistent with a finding of disability, to say nothing of the ALJ's failure to acknowledge Dr. Donatelli's medical opinion that Plaintiff was in fact disabled during this time period. The treating physicians' failure to include this type of information in their reports does not mean such support does not exist; they might not have provided this information because they were not asked to do so at the time of their reports. *See Rosa*, 168 F.3d at 80 ("Confronted with this situation, the ALJ should have taken steps directing Rosa to ask Dr. Ergas to supplement his findings with additional information."). "[I]f the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the doctor] *sua sponte*."

*Schaal*, 134 F.3d at 505.

"[B]y rejecting a treating physician's medical assessment without fully developing the factual record, the ALJ committed legal error." *Id.*; *see also Shaw*, 221 F.3d at 134 ("For the ALJ to conclude that plaintiff presented no evidence of disability at the relevant time period, yet to simultaneously discount the medical opinion of his treating physician, violates his duty to develop the factual record, regardless of whether the claimant is represented by legal counsel.");

Accordingly, the Court finds that the matter must be remanded to allow the ALJ to properly weigh the evidence and develop the record as to Plaintiff's ability to perform sedentary work during the relevant time period.

### 2.   *Obesity*

Plaintiff argues that the ALJ failed to consider the combined impact of Plaintiff's obesity and hypertension on his functional ability. For the reasons stated below, the Court finds that Plaintiff is correct.

On October 25, 1999, obesity was removed from the list of impairments in 20 C.F.R. pt. 404, subpt. P, app.1.[8] *See* Revised Medical Criteria for Determination of Disability, Endocrine System and Related Criteria, 64 Fed. Reg. 46122 (Aug. 24, 1999). Although obesity is no longer classified as a disability per se, the SSA made changes to the listings to ensure that

---

[8]   Neither side disputes the fact that the new regulations apply to Plaintiff's claim, which was filed on November 19, 1998. *See* SSR 00-3p, 65 Fed. Reg. 31039, 31041 (May 15, 2000) (providing that regulations "apply to claims that were filed before October 25, 1999, and that were awaiting an initial determination or that were pending appeal at any level of the administrative review process or that had been appealed to court.").

obesity is still considered:

> Our purpose in making these changes is to ensure that adjudicators understand that we consider obesity to be a medically determinable impairment that can be the basis for a finding of disability, and that obesity in combination with other impairments must be considered when evaluating disability at the listings step and other steps of the sequential evaluation process.

*Id.*; *see also Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995) ("[A]s this court has long recognized, the combined effect of a claimant's impairments must be considered in determining disability; the SSA must evaluate their combined impact on a claimant's ability to work, regardless of whether every impairment is severe.").

Plaintiff argues that "the ALJ never made mention of the impact of [Plaintiff's] obesity in combination with his other impairments." (Pl.'s Mem. in Supp. at 20.) More specifically, Plaintiff asserts:

> As [Plaintiff's] disabling impairments stem in part from degenerative arthritis in his knees, it stands to reason that this excessive weight will adversely impact his ability to bear that weight on standing and walking. Moreover, Dr. Altschul expressly noted the aggravation of [Plaintiff's] chest pain and shortness of breath by his obesity. For these reasons, it was imperative that the ALJ consider [Plaintiff's] obesity, in combination with his arthritic and hypertensive conditions, in determining what he can do on a regular basis.

(*Id.* (internal citations omitted).)

A review of the ALJ's decision reveals that he specifically addressed Plaintiff's obesity in the context of steps three and four of the five-step evaluation process.[9] The ALJ found

---

[9] The third step asks whether Plaintiff has an impairment listed in Appendix 1 of the regulations. If the answer to this question is no, the fourth step analyzes whether Plaintiff's severe impairment prevents him from performing his past work.

that Plaintiff's hypertension and obesity were severe, although not severe enough to meet or equal a listed impairment. (Tr. at 24-25.) The ALJ also found that Plaintiff's obesity and hypertension prevented Plaintiff from performing his past work.

With regard to step five, the ALJ found that despite Plaintiff's severe impairment and despite the fact that he could no longer work as a mover, Plaintiff retained a residual functional capacity for sedentary work because there was "nothing in the record" indicating otherwise. (*Id.* at 25.) No reference to Plaintiff's obesity was made.

The Commissioner argues that "[b]y identifying obesity as a severe impairment, the ALJ consciously acknowledged that this was an impairment that had more than a minimal impact on plaintiff's ability to function." (Def.'s Reply at 4.) In other words, according to the Commissioner, the ALJ's references to Plaintiff's conditions, albeit with regard to steps 3 and 4, are sufficient to demonstrate that the ALJ considered them with regard to Plaintiff's ability to perform sedentary work. The Court disagrees.

While it is true that the ALJ acknowledged Plaintiff's obesity and hypertension, other than Dr. Donatelli's post-1994 report that Plaintiff had been disabled since 1989, the record is devoid of any facts as to how these conditions impacted Plaintiff's ability to perform sedentary work. Thus, we are faced with the same problem noted above, namely, a gap in the record concerning how Plaintiff's impairments affected his ability to perform sedentary work and a failure by the ALJ to develop the record on this point.

Moreover, on September 12, 2002 – subsequent to the ALJ's decision but prior to the Appeals Council's final decision – the Commissioner published SSR 02-1p. This ruling provides in pertinent part:

Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected. The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.

. . . .

An assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in <u>SSR</u> <u>96-8p</u> ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.

SSR 02-1p, 67 Fed. Reg. 57859 (Sept. 12, 2002).

The Appeals Council decision contains no analysis on how Plaintiff's obesity, combined with his other impairments, affected his ability to do "sustained work activities in an ordinary work setting on a regular and continuous basis." *Id.* Given the absence of information on this issue in the record, together with the fact that it was the Commissioner's burden to demonstrate that Plaintiff retained certain functional abilities, the Court finds that the ALJ's and the Appeals Council's errors in this regard provide a further ground for remand.

### 3.    *Plaintiff's Subjective Complaints*

Plaintiff argues that the ALJ failed to properly assess Plaintiff's subjective complaints.  The Court agrees.

Social Security regulations require an ALJ to consider a claimant's subjective testimony regarding his symptoms in determining whether he is disabled.  *See* 20 C.F.R. § 404.1529(a).  An ALJ should compare subjective testimony regarding the frequency and severity of symptoms to objective medical evidence.  *Id.* § 404.1529(b).  If a claimant's subjective evidence of pain is supported by objective medical evidence, it is entitled to "great weight." *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 56 (2d Cir. 1992).  However, if a claimant's symptoms suggest a greater severity of impairment than can be demonstrated by the objective medical evidence, additional factors must be considered.  *See* 20 C.F.R. § 404.1529(c)(3).  These include daily activities, the location, duration, frequency and intensity of symptoms, the type, effectiveness and side effects of medication, and other treatment or measures to relieve those symptoms.  *Id.*

In addition, SSR 96-7p provides in pertinent part:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p (July 2, 1996).  Absent such findings, a remand is required.  *See, e.g.*, *Schultz v.*

*Astrue*, No. 04-CV-1369, 2008 WL 728925, at *12 (N.D.N.Y. Mar. 18, 2008).

Here, the ALJ found as follows:

> As evaluated within the context of <u>Social Security Ruling</u> (SSR)
> 96-7p, to the extent that the claimant's testimony concerning his
> conditions and limitations was not supported by objective medical
> evidence of an impairment or impairments likely to result in what
> was alleged on or prior to December 31, 1994, said testimony was
> not persuasive of disability prior to the expiration of insured status.

(Tr. at 26.)

The Court finds that notwithstanding the traditional deference given an ALJ with respect to evaluating credibility, *see Aponte v. Secretary, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984), the ALJ's decision to disregard Plaintiff's testimony in this case is not supported by substantial evidence. To the extent Plaintiff's reported subjective symptoms suggest a greater restriction of function than would be indicated by the medical evidence in the record, an analysis into Plaintiff's subjective complaints was required. The ALJ concluded that Plaintiff's testimony was not persuasive, yet he failed to state what allegations, if any, he found to be credible, the weight given to Plaintiff's statements, and the reasons for affording such weight. *See* SSR 96-7p. Moreover, it is unclear from the record whether or not the ALJ properly considered the factors enumerated in 29 C.F.R. 404.1529(c)(3), as they were never mentioned. Consequently, the Court is left with no basis upon which to determine whether the appropriate legal standards were applied. As a result, the Court remands this case for a determination of Plaintiff's credibility, which must contain specific findings based upon substantial evidence in a manner that enables effective review.

## III.     *The Matter is Remanded*

Courts have declined to remand if the record shows that a finding of disability is

compelled and only a calculation of benefits remains. *Medina v. Apfel*, No. 00 CIV. 3940, 2001 WL 1488284, at *4 (S.D.N.Y. Nov. 21, 2001). Conversely, if the record would permit a conclusion by the Commissioner that the plaintiff is not disabled, the appropriate remedy is to remand for further proceedings." *Id.* On this record, the Court cannot conclude whether Plaintiff had the ability to perform sedentary work during the relevant time period. Accordingly, the case is remanded to allow the ALJ to reweigh the evidence, developing the record as may be needed. *See Pratts*, 94 F.3d at 39 ("When there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence. Remand is particularly appropriate where, as here, we are unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation for the decision.") (internal citations and quotation marks omitted). Upon remand, the ALJ shall set forth his findings with particularity so that the Court may adequately review the record.

## CONCLUSION

For all of the reasons stated above, both Plaintiff's and the Commissioner's motions for judgment on the pleadings are **DENIED** and this case is remanded for further administrative proceedings consistent with this opinion. The Clerk of the Court is directed to

close this case.

**SO ORDERED.**

Dated:   Central Islip, New York
       May 8, 2008

                                            _____/s_____
                                            Denis R. Hurley
                                            United States District Judge